# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 20, 2020        Decided July 31, 2020

No. 19-1163

NATIONAL WEATHER SERVICE EMPLOYEES ORGANIZATION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

On Petition for Review of an Order of
the Federal Labor Relations Authority

*Richard J. Hirn* argued the cause and filed the briefs for petitioner.

*Noah Peters*, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was *Rebecca J. Osborne*, Deputy Solicitor.

Before: ROGERS, GRIFFITH and KATSAS, *Circuit Judges*.

Opinion for the court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The National Weather Service Employees Organization (the "Union") challenges an order of the Federal Labor Relations Authority (the "Authority") overturning an arbitrator's award in a dispute arising from a

termination provision of a collective bargaining agreement (the "CBA") between the Union and the National Weather Service (the "Employer"). When the Employer invoked that provision, the Union objected that the conditions of the termination provision had not been met and that the termination amounted to both a breach of the CBA and an unfair labor practice under 5 U.S.C. § 7116(a)(1) and (a)(5), because the Employer repudiated the agreement. An arbitrator agreed with the Union that the Employer's termination was a breach of the CBA, but ruled that the Employer did not commit an unfair labor practice. Both parties filed exceptions. The Authority ruled that there was neither a breach of the CBA nor an unfair labor practice and vacated the Arbitrator's decision.

The Union petitions for review, contending that the Authority acted contrary to law by improperly substituting its judgment for that of the Arbitrator on the breach issue, and acted arbitrarily and capriciously by disregarding its precedent in determining that the Employer did not commit an unfair labor practice. For the following reasons, we grant the petition for review as to the Authority's disposition of the breach claim and deny the petition as to the Authority's disposition of the unfair labor practice claim. In vacating the Arbitrator's breach determination, the Authority's thorough, substantive review failed to conform to the proper standard of review. In contrast, the Authority's explanation of the unfair labor practice issue, although terse, was not arbitrary or capricious. We remand the case to the Authority for any further proceedings that may be necessary.

## I.

The Employer is a federal agency whose non-management employees are represented by the Union. Since the 1980s, the Employer and the Union had been parties to a CBA. Article

29, § 1 of the CBA provides that the agreement shall continue from year to year unless one party notifies the other of its desire to renegotiate. Article 29, § 3 of the CBA provides that the CBA "will remain in effect for 90 calendar days from the start of formal renegotiation or amendment" of the CBA. NWS–NWSEO Collective Bargaining Agreement art. 29, § 3 (Oct. 25, 2001). Once the 90-day period has ended, either party may unilaterally terminate the CBA if "an agreement has not been reached and the services of neither [the Federal Mediation and Conciliation Service] nor the [Federal Service Impasses Panel] have been invoked." *Id.*

The Federal Mediation and Conciliation Service (the "Service") is "an independent agency that maintains a roster of arbitrators who handle labor-management disputes," *Fed. Educ. Ass'n v. FLRA*, 927 F.3d 514, 516 (D.C. Cir. 2019), responsible for "provid[ing] services and assistance to agencies and exclusive representatives in the resolution of negotiation impasses," 5 U.S.C. § 7119(a). If the agency and union are unable to "resolve a negotiation impasse," notwithstanding the assistance of the Service or third-party mediators, they may request the assistance of the Federal Service Impasses Panel (the "Panel"), an entity within the Authority. *Id.* § 7119(b). Its function "is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives," *id.* § 7119(c)(1), and it is empowered to "recommend to the parties procedures for the resolution of the impasse" or otherwise assist the parties in resolving the impasse themselves or, if that fails, "take whatever action is necessary and not inconsistent with [the Federal Service Labor–Management Relations Act] to resolve the impasse," *id.* § 7119(c)(5). In sum, the "Panel serves as a mechanism of last resort in the speedy resolution of disputes after negotiations have failed." *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1501 (D.C. Cir. 1984).

In July 2015, the Employer notified the Union of its desire to renegotiate the CBA. In November 2015, the parties had their first face-to-face negotiation over the ground rules that would govern renegotiation of the CBA. When the parties could not agree on ground rules, the Employer requested the assistance of the Panel. Finally, after further unsuccessful negotiation sessions, the Panel conducted a mediation in October 2016 during which the parties were able to agree on ground rules.

In January 2017, the Employer sent its first round of substantive bargaining proposals to the Union. The Union, concerned that the negotiations "would not go smoothly," preemptively requested the assistance of the Service, and then responded to the Employer with its own substantive proposals in March 2017. In April 2017, the parties met face-to-face to negotiate over their substantive proposals. In July 2017, the Employer provided written notice terminating the CBA. It notified the Union that "CBA terms continue as past practices and remain in effect until there is a new agreement;" so until that time the Employer would "maintain the status quo, operating under the procedures and policies" of the CBA. Email from David Murray, Senior Adv'r to the Employer, to Dan Sobien, Union Pres. (July 21, 2017).

The Union objected that because the services of the Service and the Panel had been invoked during negotiations, Article 29, § 3 of the CBA prohibited the Employer from unilaterally terminating the CBA. As such, the Union argued, the Employer's termination was a breach of the CBA. The Union also argued that by unilaterally cancelling the agreement, the Employer had committed an unfair labor practice by repudiating the CBA in violation of 5 U.S.C. § 7116(a)(1) and (a)(5).

The parties submitted their dispute to arbitration. An Arbitrator understood that the parties' dispute over whether the Employer had breached the CBA turned on when "formal renegotiation" of the CBA began. The Union submitted that it began when the parties started ground-rule negotiations in November 2015. If that were the case, then the Employer's November 2015 invocation of the Panel occurred within the 90-day window established by Article 29, § 3, and the termination of the agreement was improper. On the other hand, the Employer submitted that "formal renegotiation" did not begin until the parties began face-to-face negotiation of the substantive provisions of the new CBA, in April 2017. If that were the case, then the Union's July 2017 request for a mediator from the Service to attend the negotiations was outside the 90-day window, and the termination of the agreement was permitted.

The Arbitrator first determined that the Employer breached the CBA by terminating the agreement in July 2017. His decision rested on an analysis of when "formal renegotiation" of the CBA began. He agreed with the Union's interpretation that such renegotiation began when the parties commenced ground-rule negotiations in 2015, stating that the parties' ground-rule negotiation "contain[ed] all of the indicia of 'formal' negotiations whether 'substantive' or not," pointing to the extended bargaining process, the fact that the parties ultimately agreed to a six-page memorandum of understanding on ground rules, and the participation of both the Service and the Panel. Dec. & Award at 16 (Mar. 1, 2018). Second, the Arbitrator determined that the Employer had not committed an unfair labor practice. *See id.* at 18. Although the Employer had breached the CBA when it announced it was terminating the CBA, the Arbitrator reasoned that the Employer had continued to honor its terms in practice by, for example, following the arbitration procedures provided in the CBA. *Id.*

In order to remedy the breach of the CBA, the Arbitrator ordered that the Employer rescind its notice of CBA termination and return to the contractual *status quo ante*. *Id.* at 20. Both parties filed exceptions to the Arbitrator's Award, with the Employer contending that the Award failed to "draw its essence" from the CBA.

The Authority granted the Employer's exception, ruling that "the Arbitrator's reliance on several extraneous factors — on how long those preliminary negotiations dragged on, the length of the [memorandum of understanding], and the fact that [the Service] and [the Panel] had to get involved in those negotiations — led to conclusions about when 'formal' renegotiations began that are not consistent with the undisputed purpose and intent of Article 29, § 3." *Nat'l Weather Serv. Emps. Org.*, 71 F.L.R.A. 380, 382 (2019) ("Order"). The Authority stated that because the purpose of Article 29, § 3 was to "incentiv[ize] the *completion* of negotiations, ground-rules bargaining — which merely marked the *start* of negotiations — could not, and did not, trigger the ninety-day period for 'formal renegotiations' under Article 29." *Id.* In agreeing with the Arbitrator's determination that the Employer had not committed an unfair labor practice, the Authority rested on its determination that the Employer had not breached the CBA. The Authority stated that the Employer informed the Union that it would abide by the terms of the terminated CBA as past practices and had done so, such that "all provisions of the CBA remain in effect to date." *Id.* at 383. Further, because the Employer's termination of the CBA rested on a "reasonable interpretation" of Article 29, § 3, the Authority stated that there would have been no unfair labor practice even if the Employer had breached the agreement. *Id.* The Authority vacated the Arbitrator's Award. *Id.* One Member dissented, taking the position that the Arbitrator had correctly interpreted "formal renegotiation" and that the Employer's termination of the CBA

amounted to a repudiation and thus an unfair labor practice. *Id.* at 384–86 (Member DuBester, dissenting). The Union petitions for review of the Authority's Order.

## II.

The Union challenges the Authority's Order, contending that the Authority's searching, substantive review of the Arbitrator's interpretation of the CBA term "formal renegotiation" is contrary to the standard of review that the Authority must apply in reviewing an arbitrator's decision. The court's review, in turn, is limited to determining whether the Authority's Order is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 7123(c); *id.* § 706(2)(A).

## A.

A threshold issue is whether the court has jurisdiction to decide this issue. The Authority maintains that the court lacks jurisdiction to review an Authority order stemming from arbitration awards unless the order "involves an unfair labor practice." 5 U.S.C. § 7123(a). This means, in the Authority's view, that the court may review only the Authority's determination that the Employer did not commit an unfair labor practice, not its determination that the Employer did not breach the CBA. But there is no support for the proposition that the court may review only those portions of the Authority's order that involve the unfair labor practice claim.

Such a restriction on the scope of the court's jurisdiction is inconsistent with the plain meaning of the statutory text, which provides that the court has jurisdiction to review an "order" that "involves an unfair labor practice." 5 U.S.C. § 7123(a). The most natural interpretation of this provision is that so long as

the order disposes of an unfair labor practice claim — which the Authority's Order under review here does — the court has jurisdiction to review it. By granting the court jurisdiction to review the entire order, the statute forecloses the Authority's view that the court may review only the portion of the order that discusses the alleged unfair labor practice.

Further, the court has already interpreted this provision to require only "that a statutory unfair labor practice be discussed in some way in, or be some part of, the Authority's order." *Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 65 (D.C. Cir. 1987). That requirement is satisfied here; the Authority devoted a section of its opinion, entitled "The Agency's termination did not constitute a repudiation," to the issue of whether the Employer "unlawfully repudiate[d] the CBA in violation of § 7116(a)(1) and (5) of the Statute." *Nat'l Weather Serv. Emps. Org.*, 71 F.L.R.A. at 382–83. The Order thus "involves an unfair labor practice," 5 U.S.C. § 7123(a), and is reviewable in its entirety.

The cases on which the Authority relies are not to the contrary. First, the Authority cites *Association of Civilian Technicians, N.Y. State Council v. FLRA*, 507 F.3d 697 (D.C. Cir. 2007) ("*ACT*"), which stated that a "secondary effect on the unfair labor practice claim is not sufficient to qualify the order as one that involves an unfair labor practice." *Id.* at 699 (internal quotation marks omitted). The Authority suggests that this is similarly an instance in which the Employer's complained-of behavior has only a "secondary effect" on the Union's unfair-labor-practice claim. That contention is unpersuasive. In *ACT*, the issue of whether the employer had committed an unfair labor practice was not before the arbitrator and therefore not before the Authority. To the contrary, the arbitrator addressed only the issue of whether the employer agency had violated the CBA and, if so, what the appropriate

remedy should be. *See id.* at 698. The union had suggested that the employer's conduct also amounted to an unfair labor practice, but the arbitrator found that the issue was not before her and refused to address whether the employer had committed an unfair labor practice. *See id.* After the arbitrator ruled in favor of the employer, the union then filed an exception with the Authority, contending that she had erred in failing to address the union's contention that the employer had committed an unfair labor practice. *See id.* The Authority denied the exception, finding that the arbitrator had not erred in framing the issues as arising solely under the collective bargaining agreement. *Id.* Thus, the order that the petitioner asked the court to review said nothing about an unfair labor practice, except that the arbitrator properly did not address whether there had been an unfair labor practice.

Here, in contrast, the parties stipulated the issues for the Arbitrator to decide, including: "Did the [Employer] commit an unfair labor practice (ULP) in violation of 5 U.S.C. § 7116(a)(1) and (5) by repudiating the parties' 2001 CBA?" Arb. Dec. & Award at 14 (Mar. 1, 2018). The Arbitrator accepted those stipulations. *Id.* The Authority Order under review addressed whether the Employer had committed an unfair labor practice and ruled that it had not. *Nat'l Weather Serv. Emps. Org.*, 71 F.L.R.A. at 382–83. As the court in *ACT* noted, an order must only "include some 'sort of substantive evaluation of a statutory unfair labor practice'" to be reviewable under § 7123(a), *ACT*, 507 F.3d at 699 (quoting *Overseas Educ. Ass'n*, 824 F.2d at 71), which is true here. Thus, unlike the order in *ACT*, the Order under review here "involves an unfair labor practice," 5 U.S.C. § 7123(a).

Next, the Authority suggests that *American Federation of Government Employees, Local 2510 v. FLRA*, 453 F.3d 500 (D.C. Cir. 2006) ("*AFGE*"), stands for the proposition that the

court can review an order of the Authority only to "insure uniformity in the case law concerning unfair labor practices," *id.* at 505. That suggestion is unpersuasive. In *AFGE*, an arbitrator determined that two employer activities were unfair labor practices and ordered the employer to cease and desist. *Id.* at 502. In a subsequent, separate opinion, the arbitrator awarded the union attorneys' fees. *Id.* The employer did not challenge the first ruling but did file exceptions to the later attorneys' fees award. *Id.* The Authority granted one of the employer's exceptions and ruled that the attorneys' fees awarded by the arbitrator were excessive. *Id.* at 503. The union petitioned the court for review of that order. Because "[i]n the order [then] before [the court] the Authority addressed only the fee award," the order did not involve an unfair labor practice and the court therefore lacked jurisdiction to consider it. *Id.* at 504. As explained, the Order under review here expressly addresses whether the employer committed an unfair labor practice and concludes that it did not. *AFGE* therefore does not dictate that the court lacks authority to decide whether the Authority applied the correct standard of review.

**B.**

When reviewing an arbitrator's award, the Authority is required to apply a similarly deferential standard of review to that a federal court uses in private-sector labor-management issues. 5 U.S.C. § 7122(a)(2); *see Am. Fed'n Gov't Emps., Council 220*, 54 F.L.R.A. 156, 159 (1998). The Authority may vacate an arbitrator's award only when it is "contrary to any law, rule, or regulation," or "on other grounds similar to those applied by Federal courts in private sector labor-management relations." 5 U.S.C. § 7122(a). "Congress thus appears to have intended that in the area of arbitral awards the Authority would play in federal labor relations the role assigned to district courts in private sector labor law." *Griffith v. FLRA*, 842 F.2d 487,

491 (D.C. Cir. 1988). The Authority has acknowledged that it "has consistently reviewed arbitral awards under the deferential standards adopted by the Federal courts." *Social Security Admin.*, 63 F.L.R.A. 691, 692 (2009).

Consequently, the Authority reviews an arbitrator's decision highly deferentially, only to ensure that the arbitrator's award "draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the Authority may not reverse the arbitrator's award even if it is "convinced he committed serious error." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Here, the Authority's sole inquiry under the proper standard of review should have been whether the Arbitrator was "even arguably construing or applying the [CBA]." *Misco*, 484 U.S. at 38. Whether the Arbitrator correctly interpreted the CBA was beyond the scope of the Authority's review. Yet the Authority engaged in a much more searching review of the Arbitrator's decision than permitted by law. The Arbitrator recognized that the core dispute with respect to the Union's breach-of-CBA complaint involved a "determination as to when the parties' commenced 'formal renegotiation' of their CBA." Dec. & Award at 15. More than three pages of his decision analyzed the meaning of the CBA term "formal renegotiation," and thus was "construing or applying the [CBA]," *Misco*, 484 U.S. at 38. In concluding that the Arbitrator's Award "fails to draw its essence" from the CBA, the Authority offered no analysis other than to explain that Arbitrator's interpretation of "formal renegotiations" was incorrect. *Nat'l Weather Serv. Emps. Org.*, 71 F.L.R.A. at

381–82.  The Authority's view that the Arbitrator erred in his interpretation of the CBA is inadequate to warrant vacatur of the Arbitrator's Award.  Because the Authority failed to apply the correct standard of review, it acted contrary to law.  The Authority's response, that its decision was not arbitrary, capricious, or contrary to law because its interpretation of Article 29, § 3 was not unreasonable, is beside the point.  The issue is not whether the Authority reasonably construed Article 29, § 3 but rather whether it acted lawfully by applying the proper standard of review to the *Arbitrator's* interpretation of Article 29, § 3.

## III.

The Union's additional contention fares less well.  It contends that the Authority's decision that the Employer did not repudiate the CBA, and thus did not commit an unfair labor practice, was arbitrary and capricious because it failed to apply relevant Authority precedent.  The Authority responds that it relied on its longstanding precedent that a party does not repudiate a contract if it acts in accordance with a reasonable interpretation of an ambiguous contract term.

The Authority gave three reasons for its determination that the Employer did not commit an unfair labor practice.  *First*, it relied on its ruling that the Employer had not breached the agreement; certainly, the alleged breach of the CBA could not constitute an unfair labor practice if there was no breach.  Yet as explained, that breach ruling cannot be sustained and therefore cannot justify the determination that there was no unfair labor practice.  *Second*, the Authority reasoned that there was no repudiation because the Employer's own communications to the Union stated that "CBA terms continue as past practices and remain in effect until there is a new agreement."  *Nat'l Weather Serv. Emps. Org.*, 71 F.L.R.A. at

383 (quoting Union Exh. 19). The Union objects that this cannot be the basis of the Authority's finding of no unfair labor practice because the repudiation occurred when the Employer announced it was terminating the CBA, and that whether the Employer thereafter abided by its terms was immaterial. The court need not address this issue, however, because the Authority's *third* ground for determining that the Employer did not commit an unfair labor practice, namely that the Employer relied on a reasonable interpretation of Article 29, § 3 in unilaterally terminating the agreement, is adequate to sustain its ruling.

To determine whether a breach of a CBA amounts to repudiation, the Authority applies a two-pronged test. *Dep't of Justice, Bureau of Prisons*, 68 F.L.R.A. 786 (2015). The first prong asks whether the breach was "clear and patent" and requires the Authority to "analyze the clarity of the provision that the charged party allegedly breached." *Id.* at 788. "The Authority will not find a repudiation where a party acts in accordance with a reasonable interpretation of an unclear contractual term." *Id.* The second prong asks whether the breached provision "go[es] to the heart of the parties' agreement." *Id.* "Under the second prong, the Authority focuses on the importance of the provision that was allegedly breached relative to the agreement in which it is contained." *Id.* The more important the provision to the parties' agreement, the more likely its breach amounts to repudiation of the contract. Moreover, in analyzing the relative importance of the allegedly breached provision, "expressly rejecting an agreement in its entirety will always amount to a clear and patent breach that goes to the heart of the agreement." *Id.* "[W]here the meaning of a particular agreement term is unclear, acting in accordance with a reasonable interpretation of that term, even if it is not the only reasonable interpretation, does not constitute a clear and patent breach of the terms of the

agreement." *Dep't of the Air Force, 375th Mission Support Squadron, Scott Air Force Base*, 51 F.L.R.A. 858, 862 (1996).

The Authority reasonably applied this established precedent in determining that the Employer's invocation of Article 29, § 3 to terminate the CBA did not amount to repudiation of the agreement. Further, the Authority ruled, even if the Employer breached the CBA by unilaterally terminating it, "[a]t a minimum, the Agency acted upon a reasonable interpretation of Article 29, § 3 in terminating the CBA." *Nat'l Weather Serv. Emps. Org.*, 71 F.L.R.A. at 383. The Union, however, points to the Authority's instruction in *Department of Justice*, 68 F.L.R.A. at 788, that "expressly rejecting an agreement in its entirety will always amount to a clear and patent breach that goes to the heart of the agreement." So, by announcing that it was unilaterally terminating the CBA, the Union maintains, the Employer expressly rejected the agreement in its entirety and thereby repudiated the agreement, regardless of whether its interpretation of Article 29, § 3 was reasonable.

There is some tension between the Authority precedent relied upon by the Authority, ruling that no repudiation occurs when a party relies on a reasonable interpretation of a contract term, and the Authority precedent relied upon by the Union, ruling that express rejection of a CBA will always amount to repudiation. The Authority made no attempt to resolve this conflict and did not analyze the line of authority upon which the Union relied.

"A fundamental norm of administrative procedure requires an agency to treat like cases alike." *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007). "We have held that '[r]easoned decision making . . . necessarily requires the agency to acknowledge and provide an adequate explanation

for its departure from established precedent,' and an agency that neglects to do so acts arbitrarily and capriciously." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1119 (D.C. Cir. 2010) (alterations in original) (quoting *Dillmon v. NTSB*, 588 F.3d 1085, 1089–90 (D.C. Cir. 2009)). Consequently, Authority decisions that "'conflict with prior [Authority] precedent' will be overturned." *Dep't of the Navy, Naval Aviation Depot v. FLRA*, 952 F.2d 1434, 1439 (D.C. Cir. 1992) (quoting *Am. Fed'n of Gov't Emps., Local 32 v. FLRA*, 853 F.2d 986, 991 (D.C. Cir. 1988)). Although the court has "never approved an agency's decision to completely ignore relevant precedent," it will "'permit agency action to stand without elaborate explanation where distinctions between the case under review and the asserted precedent are so plain that no inconsistency appears.'" *Id.* (quoting *Bush-Quayle '92 Primary Comm., Inc. v. FEC*, 104 F.3d 448, 454 (D.C. Cir. 1997)). "While the [Authority] need not address every precedent brought to its attention, it must provide an explanation where its decisions appear to be 'on point.'" *Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 277 (D.C. Cir. 2001) (quoting *Gilbert v. NLRB*, 56 F.3d 1438, 1448 (D.C. Cir. 1995)). But "where the circumstances of the prior cases are sufficiently different from those of the case before the court, an agency is justified in declining to follow them, and the court may accept even a 'laconic explanation as an "ample" articulation of its reasoning.'" *Gilbert*, 56 F.3d at 1445 (quoting *Hall v. McLaughlin*, 864 F.2d 868, 873 (D.C. Cir. 1989)).

Despite this shortcoming, the precedent that the Union cites is "sufficiently distinguishable to assure that the [Authority's failure] does not present a danger that it has arbitrarily departed from its own precedents." *New England Grain & Feed Council v. ICC*, 598 F.2d 281, 285 (D.C. Cir. 1979). Here, determining whether the Employer repudiated the

CBA requires interpreting Article 29, § 3, because if the Employer's interpretation was correct then there was no breach and thus certainly no unfair labor practice. Put another way, although the Employer did reject the CBA in the sense that it terminated the agreement, it did so in express reliance on a term of that agreement that authorized its termination in some circumstances. The Employer thus purported to be acting in compliance with the CBA. That is enough to bring it within the reach of the Authority's longstanding precedent that there is no repudiation when a party relies on a reasonable construction of a CBA term. And that fact distinguishes the instant case from the cases on which the Union relies in which the Authority has found that an employer repudiated a CBA by rejecting it in its entirety.

In none of those cases did the repudiating party invoke a provision of the agreement that provided for its cancellation. For example, in *Department of Defense Dependents School*, 50 F.L.R.A. 424 (1995), the Authority found that the employer had repudiated the CBA when it announced to the union "that the agreement could not be recognized." *Id.* at 436. Yet the employer's only basis for its announcement was a substantive disagreement with the terms of that agreement. *See id.* Unlike the present case, the agreement there contained no provision for its own termination. Similarly, in *American Federation of Government Employees*, 21 F.L.R.A. 986 (1986), the Authority ruled that a union had repudiated a Memorandum of Understanding when it "rescinded" the Memorandum "in its entirety and refused to abide by the terms set forth therein." *Id.* at 986, 988. Yet the union there provided no basis for that decision other than its view that all matters were still "on the table," *id.* at 987, and did not purport to terminate the Memorandum pursuant to a term of the Memorandum itself. The Authority's decision is evidently based on the reasonable view that a party to a CBA does not reject an agreement in its

entirety by unilaterally terminating it when the CBA can be reasonably interpreted to confer on that party a right to do so. When a CBA provides a mechanism for its own termination, a party abides by, rather than rejects, the agreement by availing itself of that mechanism.

Although not articulated by the Authority, this distinction is sufficiently evident that the court is confident that the Authority has not arbitrarily departed from its established precedent, *see Gilbert*, 56 F.3d at 1446. Because the Authority reasonably applied its precedent to determine that the Employer did not repudiate the CBA even if it breached it, its decision that there was no unfair labor practice is neither arbitrary nor capricious and must be left undisturbed.

Accordingly, the court grants the petition for review as to the Authority's disposition of the breach claim, denies the petition as to the Authority's disposition of the unfair labor practice claim, and remands the case to the Authority for any further proceedings that may be necessary.