# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 22, 2021          Decided July 2, 2021

No. 20-1183

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 3690,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

On Petition for Review of an Order
of the Federal Labor Relations Authority

*Joshua Lee Davis* argued the cause for petitioner. On the briefs was *Jack K. Whitehead, Jr.*

*Sarah C. Blackadar*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With her on the brief were *Noah B. Peters*, Solicitor, and *Rebecca J. Osborne*, Deputy Solicitor.

Before: HENDERSON, WILKINS and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The United States Department of Justice Federal Bureau of Prisons Federal Correctional Institution Miami, Florida (FCI Miami) implemented a staffing practice without negotiating with the union representing the FCI Miami employees—the American Federation of Government Employees, Local 3690, AFL-CIO (AFGE). AFGE filed a grievance and subsequently invoked arbitration; the arbitrator ruled in favor of AFGE. FCI Miami excepted to the arbitrator award with the Federal Labor Relations Authority (FLRA or Authority) and the Authority set aside the award in its entirety for failing to draw its essence from the collective bargaining agreement (Master Agreement) between the Federal Bureau of Prisons—including FCI Miami—and AFGE. AFGE petitions for review of the Authority decision. However, § 7123(a)(1) of the Federal Service Labor-Management Relations Statute (FSLMRS) allows for judicial review of an Authority decision arising from review of arbitral awards only if "the order involves an unfair labor practice." 5 U.S.C. § 7123(a)(1). Because the Authority decision does not "involve" an unfair labor practice, we lack jurisdiction to review the decision and accordingly dismiss AFGE's petition.

## I. BACKGROUND

FCI Miami employees work in several roles and departments, with the largest department being the Custody Department—staffed by "Custody" employees. Other departments are "Non-Custody" departments and are staffed by "Non-Custody" employees. Before 2016, when the Custody Department was short-staffed, FCI Miami either left positions in the Custody Department vacant or paid a Custody employee overtime. In early January 2016, FCI Miami notified AFGE that it planned to start using Non-Custody employees to fill vacant Custody Department positions; it called the process

"augmentation." AFGE shortly thereafter sought to negotiate the matter but FCI Miami denied the request, telling AFGE that it had implemented augmentation in accord with Article 18 of the Master Agreement, which permits FCI Miami to change the shift or assignment of Custody and Non-Custody employees: in short, FCI Miami viewed augmentation as "reassignment." After FCI Miami failed to negotiate regarding augmentation, AFGE filed a formal grievance, alleging that FCI Miami had violated both the Master Agreement and its past practices by implementing augmentation. FCI Miami responded that it had authority to institute augmentation under the Master Agreement and denied AFGE's grievance. AFGE then invoked arbitration.

The arbitrator concluded, in relevant part, that FCI Miami had breached a binding past practice of non-augmentation and violated several provisions of the Master Agreement—as well as a separate Memorandum of Understanding (MOU) between FCI Miami and AFGE—by implementing and failing to bargain over augmentation. Shortly thereafter, FCI Miami filed exceptions to the arbitrator award with the Authority and AFGE filed an opposition to FCI Miami's exceptions. The Authority—over a dissent—concluded that the arbitrator award failed to draw its essence from the parties' agreement because Article 18 of the Master Agreement unambiguously "gives [FCI Miami] broad discretion to assign and reassign employees"—encompassing the practice of augmentation— and set aside the award in its entirety. *U.S. & Am. Fed'n of Gov't Emps.*, 71 F.L.R.A. 660, 661–62 (2020).[1] The Authority

---

[1] Although FCI Miami filed several exceptions to the arbitrator award, the Authority reached only the first exception because it concluded the award failed to draw its essence from the Master Agreement. *Id.* at 662 n.26.

majority also explained that the *Steelworkers* trilogy[2] of Supreme Court cases did not require it "to ignore erroneous arbitral awards that run counter to the plain language, or judicial interpretations, of contractual provisions," noting that the FSLMRS provision providing for the Authority's review of arbitral awards allows the Authority to find such "awards deficient 'on other *grounds similar to* [not the same as] those applied by Federal courts in private sector [arbitrations].'" *U.S. & Am. Fed'n of Gov't Emps.*, 71 F.L.R.A. at 664 (alterations and emphasis in original) (quoting 5 U.S.C. § 7122(a)(2)).[3] AFGE timely petitioned for review of the Authority decision.

## II.  DISCUSSION

We lack jurisdiction to review the Authority decision because it does not "involve[] an unfair labor practice."  5 U.S.C. § 7123(a)(1).  The Congress provided "a two-track system" in the FSLMRS "for resolving labor disputes." *Overseas Educ. Ass'n v. FLRA* (*Overseas*), 824 F.2d 61, 62

---

[2] *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960).

[3] Then-FLRA Member DuBester—now Chairman—dissented, arguing the majority improperly discounted the arbitrator's finding of a past practice, incorrectly relied on *Federal Bureau of Prisons v. FLRA* (*BOP I*), 654 F.3d 91 (D.C. Cir. 2011), and *United States Department of Justice v. FLRA* (*BOP II*), 875 F.3d 667 (D.C. Cir. 2017), and erroneously distinguished and rejected the application of the *Steelworkers* trilogy to review of arbitral awards in the federal public sector. *U.S. & Am. Fed'n of Gov't Emps.*, 71 F.L.R.A. at 669–76 (DuBester, dissenting).  FLRA Member Abbott concurred, noting he would have more definitively held that any earlier Authority decisions, to the extent they "requir[ed] blind deference to erroneous arbitral determinations," should not be followed.  *Id.* at 667–68 (Abbott, concurring).

(D.C. Cir. 1987). One track permits a party subjected to an unfair labor practice to file a charge with the Authority's General Counsel, who investigates and determines whether to issue a complaint. *Id.* at 63 (citing 5 U.S.C. § 7118(a)). If a complaint issues, the Authority adjudicates the matter and its decision is subject to judicial review. *Id.* (citing 5 U.S.C. § 7123). The other track allows the parties to a collective bargaining agreement to invoke binding arbitration if the collective bargaining agreement's grievance procedures do not resolve a dispute. *Id.*; *see also* 5 U.S.C. § 7121(b)(1)(C)(iii). The arbitrator award is reviewable by the Authority. 5 U.S.C. § 7122. But our review of the Authority decision is prohibited by § 7123 unless the decision "*involves an unfair labor practice under section 711[6]*" of the FSLMRS. *Overseas*, 824 F.2d at 63 (alteration and emphasis in original) (quoting 5 U.S.C. § 7123(a)).[4] In *Overseas*, we recognized that, although "some labor disputes are capable of following either track," *id.* at 63, "[t]he fact that the underlying conduct *could be* characterized as a statutory unfair labor practice" is not enough, *id.* at 67 (emphasis in original). Under § 7123(a), "a statutory unfair labor practice must be either an explicit ground for, or be necessarily implicated by, the Authority's decision" to subject it to judicial review. *Overseas*, 824 F.2d at 67–68. Put another way, the Authority decision "need not address an unfair labor practice on the merits to involve an unfair labor practice, but it does need to include some sort of substantive evaluation of a statutory unfair labor practice": "mere passing reference to an unfair labor practice will not suffice." *Ass'n of Civilian Technicians, N.Y. State Council v. FLRA* (*ACT*), 507 F.3d 697,

---

[4] The FSLMRS refers to § 7118 but we have recognized that this is an error and that "the correct reference" is to § 7116 of the FSLMRS. *Id.* at 63 n.2.

699 (D.C. Cir. 2007) (citations and internal quotation marks omitted).

AFGE asserts that the Authority decision involved an unfair labor practice because it "necessarily implies" an unfair labor practice. Pet'r's Br. 11 (emphasis omitted). We disagree. There is no discussion, mention or implication of an unfair labor practice in the Authority decision. Further, the arbitrator award does not once mention an unfair labor practice and none of the listed issues in the award, set forth with AFGE's agreement, mentions or pertains to a statutory unfair labor practice. Pet'r's App. (P.A.) 1.[5] Even if AFGE *could* have characterized the underlying conduct as a statutory unfair labor practice, it did not do so. In fact, this seems to be a quintessential example of exactly the scenario we discussed in *Overseas*: AFGE "affirmatively chose to invoke the agreement, not the statute. It must now live with the consequences that flow from invocation of this theory. [It] cannot be permitted at this late stage to transform its grievance claim into a statutory claim." *Overseas*, 824 F.2d at 69. AFGE chose the arbitration-grievance process, framing the issues as contractual until it received an unfavorable ruling from the Authority. At that point, AFGE petitioned our court for review and asserted that its claim was an unfair labor practice all along, even though its earlier arguments, the arbitrator award and the Authority

---

[5] FCI Miami's exceptions reference an unfair labor practice in a single footnote, asserting that "[t]he current case is clearly a[n unfair labor practice] brought through arbitration," P.A. at 50 n.3; AFGE's opposition only references FCI Miami's footnote, *id.* at 155. Assuming *arguendo* that a party's statement to the Authority can establish that an Authority decision involves an unfair labor practice, these *de minimis* references in the parties' filings do not: they do not demonstrate that the Authority decision "necessarily implicated," *Overseas*, 824 F.2d at 68, or "substantive[ly] evaluate[d]," *ACT*, 507 F.3d at 699 (citation omitted), an unfair labor practice.

decision all focused on the Master Agreement—and, to a lesser extent, the MOU—without mention of statutory unfair labor practices.[6] The consequence of AFGE's choice is that we do not have jurisdiction.

Review of our precedent bolsters our conclusion: the instant case is well-within the scope of several previous decisions in which we concluded we did not have jurisdiction. In *United States Department of the Interior v. FLRA* (*Interior*), we held that an Authority decision did not involve an unfair labor practice where the "arbitrator's decision clearly frame[d] the issue as one arising solely under the parties' collective bargaining agreements[,] . . . analyze[d] the case as an alleged breach of contract and f[ound] for the unions on that basis" and the Authority "decision repeat[ed] the arbitrator's statement of the issue as one sounding in contract and conclude[d] that the arbitrator's decision was sound." 26 F.3d 179, 184 (D.C. Cir. 1994). The underlying decisions in *Interior* also suggested that "an argument could be made *in an appropriate forum*" that the actions in that case "constituted an unfair labor practice" but we nonetheless found the "passing reference" was not enough to provide us with jurisdiction. *Id*. (emphasis in original). Here, analysis is even more straightforward. The arbitrator award listed multiple merits issues—with the parties'

---

[6] AFGE raises the MOU as a separate basis for concluding the Authority decision involved an unfair labor practice. Pet'r's Br. 19–24. Assuming the repudiation of the MOU was properly raised before the Authority and can be raised on appeal, AFGE raised the MOU before the Authority in the context of its contract-based arguments. *See* P.A. 150 (arguing FCI Miami's "failure to follow the local MOU and negotiate before implementation of the augmentation was a breach of contract" and that breach constituted the underlying MOU issue). That AFGE potentially could have raised the alleged violation of the MOU as a separate, statutory unfair labor practice is of no moment.

agreement—and all were based in contract. The Authority decision focused entirely on contractual claims, despite disagreeing with the arbitrator award. There is also no Authority statement substantively discussing or implicating unfair labor practices.

*ACT* is especially instructive. There, we concluded the Authority decision did not "involve" an unfair labor practice where:

> The Authority did not engage in any substantive discussion of the Union's unfair labor practice claim in its order, but instead explicitly found that the arbitrator was justified in concluding that the substance of the unfair labor practice claim was not part of the dispute. As in [*Interior*], the "arbitrator's decision clearly frame[d] the issue as one arising solely under the parties' collective bargaining agreements," the "arbitrator analyze[d] the case as an alleged breach of contract," and the Authority's order "repeat[ed] the arbitrator's statement of the issue as one sounding in contract."

*ACT*, 507 F.3d at 700 (quoting *Interior*, 26 F.3d at 184). Here, the Authority decision did not discuss an unfair labor practice at all and the issues were plainly framed and discussed as sounding in contract. As in *Interior* and *ACT*, the Authority decision does not "involve" an unfair labor practice.

This case is also distinguishable from cases in which we concluded an Authority decision did involve an unfair labor practice. In *National Weather Service Employees Organization v. FLRA*, the Authority "addressed whether the Employer had committed an unfair labor practice and ruled that it had not" and the parties stipulated before the arbitrator that

one of the issues to be decided was whether the employer committed an unfair labor practice. 966 F.3d 875, 880 (D.C. Cir. 2020). Here, none of the issues the parties consented to before the arbitrator included any analysis of an unfair labor practice and the Authority did not address unfair labor practices in its decision, let alone devote a section to discussing whether one was committed. In *United States Department of the Navy, Naval Undersea Warfare Center Division Newport v. FLRA* (*Undersea*), the Authority decision necessarily implicated a statutory unfair labor practice because the contract provided no ground for the decision. 665 F.3d 1339, 1345 (D.C. Cir. 2012). Here the Master Agreement's Article 18 provided the main basis for the Authority decision.

AFGE makes several additional arguments to the contrary but we are unpersuaded. Citing our decision in *Undersea*, AFGE asserts that the Authority's citation to *BOP I* and *BOP II* means this case necessarily involves an unfair labor practice because *BOP I* and *BOP II* addressed unfair labor practices. However, the Authority cited *BOP I* and *BOP II* for their interpretation of the contractual provision at the center of the merits dispute here—Article 18 of the Master Agreement—and to provide background for the long saga regarding this particular provision of the Master Agreement. *See U.S. & Am. Fed'n of Gov't Emps.*, 71 F.L.R.A. at 663. The Authority order did not "derive[]" the meaning of Article 18 from the FSLMRS. *Undersea*, 665 F.3d at 1345–46. Next, AFGE argues that the Authority's discussion of the *Steelworkers* trilogy allows us to exercise jurisdiction. But that argument stretches the Authority's discussion of the *Steelworkers* trilogy too far and cannot be squared with our approach in *Overseas*. *See Overseas*, 824 F.2d at 66. Citation to and discussion of the *Steelworkers* trilogy is not surprising in Authority decisions reviewing arbitral awards and would—like allowing a party to convert a claim pursued as a contractual claim to a statutory

unfair labor practice at the petition stage to obtain review—"drastically limit[]" the effect the Congress intended by curtailing judicial review of claims pursued through the arbitration path. *Id*. at 66.

Finally, AFGE unavailingly points to *Leedom v. Kyne*, 358 U.S. 184 (1958), and *United States Department of the Treasury, United States Customs Service v. FLRA* (*Customs Service*), 43 F.3d 682 (D.C. Cir. 1994), as alternative bases for our jurisdiction even if this case does not involve a statutory unfair labor practice. *See* Pet'r's Br. 27–39. In 2006, we explained that the *Leedom* exception "is premised on the *original* federal subject matter jurisdiction of the district courts." *Am. Fed'n of Gov't Emps., Local 2510 v. FLRA*, 453 F.3d 500, 506 (D.C. Cir. 2006) (emphasis in original) (quoting *Customs Service*, 43 F.3d at 688 n.6). As we are not a district court, *Leedom* cannot serve as the basis for our jurisdiction. *Customs Service* also does not provide us with jurisdiction. Unlike in *Customs Service*, here the Authority did not assert jurisdiction of and interpret a statute not meant to regulate the working conditions of employees. *See* 43 F.3d at 686; *see also U.S. Dep't of Homeland Sec. v. FLRA*, 784 F.3d 821, 823 (D.C. Cir. 2015) (explaining limited exception to § 7123 created by *Customs Service*). Instead, the Authority interpreted a collective bargaining agreement—the Master Agreement—governing the working conditions of employees as well as the statutes and rules applicable to labor-management arbitration and review of such arbitration in the federal public sector.

For the foregoing reasons, we lack jurisdiction to review AFGE's petition and dismiss the petition.

*So ordered.*