# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 6, 2023          Decided April 23, 2024

No. 22-5308

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
NATIONAL COUNCIL OF HUD LOCALS COUNCIL 222,
AFL-CIO,
APPELLEE

v.

FEDERAL LABOR RELATIONS AUTHORITY AND SUSAN TSUI
GRUNDMANN, IN HER OFFICIAL CAPACITY AS CHAIRMAN OF
THE FEDERAL LABOR RELATIONS AUTHORITY,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00998)

———

*Thomas Tso*, Solicitor, Federal Labor Relations Authority, argued the cause for appellants. With him on the briefs were *Rebecca J. Osborne*, Deputy Solicitor, and *Nariea K. Nelson*, Attorney.

*Andres M. Grajales* argued the cause for appellee. With him on the brief were *David A. Borer* and *Mark L. Vinson*.

Before: WILKINS and WALKER, *Circuit Judges*, and

RANDOLPH, *Senior Circuit Judge.*

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Opinion concurring in the result filed by *Circuit Judge* WILKINS.

RANDOLPH, *Senior Circuit Judge*:

The salaries for most civilian federal jobs are set out in the General Schedule, a payscale that spans fifteen "grades." The higher the grade the greater the compensation.

In 2002, the Department of Housing and Urban Development advertised job openings having a promotion potential to grade thirteen. At the time, existing employees in comparable positions could be promoted only to grade twelve. The existing employees were represented by the American Federation of Government Employees, National Council of HUD Locals Council 222, AFL-CIO. The union took the position that the difference in the treatment of existing employees and those to be hired violated its collective bargaining agreement with HUD. The union filed a grievance to that effect. HUD rejected it and the union's grievance proceeded to arbitration.

Now, more than twenty years after it began, the controversy has reached our court.

## I.

The Federal Service Labor-Management Relations Statute—the FSLMRS—established a framework for resolving disputes between federal agency employers and unions

representing agency employees. 5 U.S.C. §§ 7101 *et seq.*; *id.* § 7121(b)(1)(C)(iii). Most grievances may be settled through arbitration, but an arbitrator generally has no authority to decide grievances involving the classification of employees' positions.[1] *Id.* § 7121(c)(5).

If a dispute goes to arbitration, a party dissatisfied with the result—commonly called an "award"—may contest the result by filing exceptions with the Federal Labor Relations Authority. *Id.* § 7122(a). If neither party files exceptions, the arbitrator's award becomes "final and binding." *Id.* § 7122(b). The FLRA may overturn an arbitrator's award if it finds that the award is "contrary to any law, rule, or regulation," or if the award is deficient on "grounds similar to those applied by Federal courts in private sector labor-management relations." *Id.* § 7122(a).

In cases not involving an arbitration, a party dissatisfied with an FLRA decision may obtain judicial review in a federal court of appeals. *Id.* § 7123(a).

The law treats FLRA decisions in arbitration cases differently. Excluded from judicial review are FLRA orders "involving an award by an arbitrator," "unless the order involves an unfair labor practice" as defined elsewhere in the FSLMRS. *Id.* § 7123(a)(1); *see id.* § 7116.

From the outset of this protracted dispute, the union and HUD disagreed on a fundamental issue: whether the union's grievance involved classification. *U.S. Dep't of Hous. & Urb. Dev. Wash.*, 59 F.L.R.A. 630, 630 (2004). Was the grievance based on *reclassification*—the promotion potential of the

---

[1] Classification-related grievances are arbitrable when reclassification results in a reduction in pay or grade. 5 U.S.C. § 7121(c)(5). That exception does not apply here.

4

employees' permanent positions—or *reassignment*—the employees' right to be placed in the new positions that HUD had posted? Only a request for reassignment could be potentially resolved in arbitration.

The parties submitted the question to the arbitrator, who concluded in an interim order that the dispute involved the fairness of the vacancy announcements, not classification. *See id.* HUD filed an interlocutory exception challenging the arbitrator's jurisdiction. *Id.* The FLRA declined to resolve the jurisdictional issue at that time and remanded the matter to the arbitrator for "clarification." *Id.* at 632.

Upon remand, the arbitrator again determined that the grievance was arbitrable. On the merits, the arbitrator, finding that HUD had violated the parties' collective bargaining agreement, ordered a retroactive "organizational upgrade of affected positions." Again, HUD filed exceptions, arguing that the "organizational upgrade" remedy required reclassification and therefore violated the FSLMRS.

The FLRA agreed with HUD. *U.S. Dep't of Hous. & Urb. Dev.*, 65 F.L.R.A. 433, 436 (2011). So the FLRA vacated the arbitrator's remedial award and remanded for an alternative remedy. *Id.*

The arbitrator then issued new remedies. During implementation of these remedies, the parties raised various exceptions to the arbitrator's written progress summaries, resulting in five more FLRA decisions.[2] Those FLRA decisions did not reconsider the arbitrator's threshold decision that the dispute was arbitrable.

---

[2] The parties and the district court treat each of the arbitrator's interim summaries as separate "awards."

In 2018, the FLRA rendered its eighth decision in this matter. On review of exceptions to the arbitrator's tenth written summary, the FLRA held that "the essential nature of this grievance . . . concerned classification." *U.S. Dep't of Hous. & Urb. Dev.*, 70 F.L.R.A. 605, 608 (2018) ("*HUD VIII*"). This meant that "the [a]rbitrator has always lacked jurisdiction over the grievance, as a matter of law." *Id.* The FLRA therefore vacated all of the arbitrator's pronouncements and its own prior decisions. *Id.* One Member dissented. *Id.* at 609–10. The FLRA denied the union's motion for reconsideration. *U.S. Dep't of Hous. & Urb. Dev.*, 71 F.L.R.A. 17, 20 (2019).

The union then filed a four-count complaint in district court claiming that the FLRA's decision was "ultra vires." The complaint invoked § 7122(b) of the FSLMRS, a provision stating that an arbitrator's award becomes "final and binding" if no exceptions are filed within thirty days.[3] The union claimed that in vacating awards that had become final and binding, the FLRA had violated the Administrative Procedure Act, 5 U.S.C. § 706. The district court rejected the union's APA claim but denied the FLRA's motion to dismiss the entire complaint for lack of subject matter jurisdiction, holding that it had jurisdiction because "the [FLRA] exceeded its delegated

---

[3] Section 7122(b) provides in full:

> If no exception to an arbitrator's award is filed under subsection (a) of this section during the 30-day period beginning on the date the award is served on the party, the award shall be final and binding. An agency shall take the actions required by an arbitrator's final award. The award may include the payment of backpay (as provided in section 5596 of this title).

powers." The court concluded that "the Union has stated a claim as to Count I, which alleges that the [FLRA's] decision to vacate final and binding arbitration awards was *ultra vires*." The court later granted the union's motion for summary judgment on that count.

The issues on appeal concern the district court's denial of the FLRA's motion to dismiss for lack of jurisdiction and the court's grant of summary judgment.

## II.

Section 7123(a) of the FSLMRS provides for judicial review of some FLRA decisions. The provision establishes that:

> (a) Any person aggrieved by any final order of the Authority other than an order under--
>
>> (1) section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title, or
>>
>> (2) section 7112 of this title (involving an appropriate unit determination),
>
> may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.


5 U.S.C. § 7123(a).

Neither the grievance nor the FLRA's decision in this case involves an "unfair labor practice." Section 7123(a)(1) therefore "flatly" foreclosed the jurisdiction of this court to conduct direct judicial review of the FLRA's order vacating the arbitration awards. *U.S. Dep't of Just. v. FLRA*, 981 F.2d 1339, 1342 (D.C. Cir. 1993).[4] Even so, the union contends that as a matter of statutory interpretation § 7123(a) prohibits only court of appeals direct review of FLRA arbitration decisions, not district court review of agency actions when the agency exceeds its statutory authority. On this theory, the union claimed that its suit in the district court circumvented the § 7123(a) bar against judicial review of arbitration decisions. Our court has already answered the union's argument: "We cannot imagine that Congress, having vested in courts of appeals exclusive jurisdiction to review all [FLRA] decisions except those relating to appropriate unit determinations [and arbitration orders], would have intended that such determinations could nevertheless be reviewed by district courts." *Ass'n of Civilian Technicians v. FLRA*, 283 F.3d 339, 341–42 (D.C. Cir. 2002).

This brings us to the union's argument from *Leedom v. Kyne*, 358 U.S. 184 (1958), a case dealing with the National Labor Relations Act. That Act foreclosed direct judicial review in the courts of appeals of the National Labor Relations Board's collective bargaining unit certifications.[5] Even so, *Kyne* upheld district court review of a particular Board unit certification. *Id.* at 190–91. As Judge Friendly explained, the "conflict" between the Act's prohibition and the NLRB's action was "plain": "[The

---

[4] We have jurisdiction over this appeal from the district court. *See United States v. Corrick*, 298 U.S. 435, 440 (1936).

[5] *See Am. Fed'n of Lab. v. NLRB,* 308 U.S. 401, 411 (1940).

National Labor Relations Act] declared that the Board 'shall not' decide that any unit including professional and non-professional employees is appropriate for collective bargaining unless a majority of the professionals vote for inclusion. The Board conceded it had done exactly what it was forbidden to do." *Local 1545, United Brotherhood of Carpenters & Joiners of Am. v. Vincent*, 286 F.2d 127, 132 (2d Cir. 1960).

*Kyne* treated the jurisdictional issue as one of statutory interpretation: did the relevant legislation bar judicial review in the district court? 358 U.S. at 188–90. The Court answered the question by declaring that Congress could not possibly have intended to bar district court review of "an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188. The Court's opinion neither quoted nor cited the statutory language it was interpreting. This omission may be explained in light of the loose concept of "legislative intent" dominating statutory interpretation in 1958, when *Leedom v. Kyne* issued. Then the Court generally believed if "the text deviate[d] markedly from [a statute's] apparent purpose, Congress must have 'intended' to use the statute's words in something other than their conventional sense." John F. Manning, *Textualism and the Equity of the Statute*, 101 COLUM. L. REV. 1, 6–7 (2001). But by the close of the twentieth century, that approach was largely rejected in favor of a stricter focus on a statute's text. *Id.*

Relying on *Leedom v. Kyne*, the union claims that § 7123(a) means that only courts of appeals are barred from reviewing FLRA arbitration rulings, leaving the district courts free to do so whenever the FLRA violates a "definite statutory prohibition of conduct." *See Kyne*, 358 U.S. at 189 (quoting *Tex. & New Orleans R.R. Co. v. Brotherhood of Ry. & S.S. Clerks*, 281 U.S. 548, 568 (1930)). Many decisions of our court have dealt with

the meaning of § 7123(a). *Griffith v. FLRA*, 842 F.2d 487 (D.C. Cir. 1988), for instance, decided that "the specific language of § 7123" precluded not just court of appeals judicial review but also district court review of FLRA arbitration decisions not involving unfair labor practices. *Id.* at 493. The court's reasoning deserves full quotation:

> To be sure, Congress did not explicitly deny to *district* courts the power to review FLRA decisions. Nevertheless, where Congress has set out a complex scheme authorizing certain types of review but not others, the express preclusion of review of FLRA orders under § 7122 in the one mention of the subject [(arbitration decisions] powerfully suggests an intent to preclude review in every court. *See United States v. Fausto*, 484 U.S. 439 (1988); *Block* [*v. Community Nutrition Institute*, 467 U.S. 340,] 346–47 [(1984)]; *Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297, 305–06 (1943). This is especially true in light of Congress's having explicitly given the district courts review authority in one area, namely temporary relief in unfair labor practice proceedings. *See* 5 U.S.C. § 7123(d).

*Id.* at 491 (italics in original). The *Griffith* court also relied on the legislative history of § 7123 and quoted, adding italics, the Conference Committee's statement that "*there will be no judicial review of the Authority's action on those arbitrators' awards in grievance cases which are appealable to the Authority.*" *Id.* at 492 (quoting H.R. Rep. No. 95-1717, at 153 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2887).[6]

---

[6] *Griffith's* analysis gains further support from the requirement in § 7123(c) that "[r]eview of the Authority's order shall be on the record in accordance with [5 U.S.C. §] 706," the judicial review provision of

"Congress," the court concluded, "could hardly have made its view on the matter clearer." *Id.*

The analysis portion of *Griffith* dealing with non-constitutional claims was in two parts. Part "A," from which the block quotation above is taken, dealt with the question whether in § 7123(a), Congress precluded judicial review of FLRA arbitration decisions, not only in the courts of appeals, but also in the district courts.[7] *Griffith* concluded that Congress had clearly barred judicial review in both. *Id.* at 492.

In the second non-constitutional portion of *Griffith* concerning *Leedom v. Kyne*—Part "B"—the court stated that even if "Congress is understood generally to have precluded review," *Kyne* could, in some circumstances, permit the district court to exercise judicial review of an FLRA arbitration order. *Id.* at 493. The beginning of the *Griffith* opinion also seemed to suggest that even though Congress had foreclosed judicial review in any federal court, the rationale of *Leedom v. Kyne* could potentially confer jurisdiction on the district court.[8]

---

the Administrative Procedure Act. Yet as the district court held, and as the union conceded, the APA did not apply in this case.

[7] *Griffith* was on appeal from the judgment of the district court "holding that 5 U.S.C. § 7123(a) barred judicial review of non-constitutional claims." 842 F.2d at 489–90.

[8] The court put it this way: "We first address the availability of judicial review for nonconstitutional claims. We find unusually clear congressional intent generally to foreclose review. Although we find that the statute leaves the door ajar for review of clear violations of statutory authority under *Leedom v. Kyne*, 358 U.S. 184 (1958), we conclude that none of the errors asserted here qualifies." 842 F.2d at 490.

11

By that, *Griffith* could not have meant that *Kyne* creates jurisdiction where Congress has expressly eliminated it. The problem arises because "the subject-matter jurisdiction of the lower federal courts is determined by *Congress*." *Argentine Republic v. Amerada Hess Shipping Co.*, 488 U.S. 428, 433 (1989) (italics added). Congress's constitutional authority to "constitute Tribunals inferior to the supreme Court," U.S. CONST. art I., § 8, cl. 9, "includes [the] lesser power to limit the jurisdiction of those courts." *Patchak v. Zinke*, 583 U.S. ___, 138 S. Ct. 897, 906 (2018) (plurality opinion); *see also Mark v. Republic of Sudan*, 77 F.4th 892, 896 (D.C. Cir. 2023) (quoting *Patchak*, 138 S. Ct. at 906)). "It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, at least in non-constitutional cases like this one, the federal judiciary cannot create its own jurisdiction, even if that jurisdiction is "extraordinarily narrow," *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1312 (D.C. Cir. 1984), or "extremely limited [in] scope." *Griffith*, 842 F.2d at 493. So in non-constitutional cases, if a federal statute clearly bars district court jurisdiction—as § 7123(a) does over arbitration-related decisions—that ends the matter.[9] *See Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991).

---

[9] As Judge Easterbrook has explained, there can be no "doubt[] about the power of Congress to restrict the jurisdiction of district courts—for until 1875 the inferior courts lacked any federal-question jurisdiction, and until 1980 the federal-question jurisdiction was qualified by an amount-in-controversy requirement. No one thinks the Judiciary Act of 1789 a colossal violation of Article III on this account." *Czerkies v. Dep't of Lab.*, 73 F.3d 1435, 1434–44 (7th Cir. 1996) (Easterbrook, J., concurring).

*Griffith*, in interpreting § 7123(a), did not confront these constitutional difficulties.  The Supreme Court has "repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect."  *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996).  We see no need to say more on the subject, except to emphasize that *Griffith* interpreted § 7123(a) as a bar to district court jurisdiction.

Our court has consistently held that § 7123(a) bars district court review of FLRA arbitration decisions.  In *American Federation of Government Employees v. Loy*, another panel of our court held:  "If an FLRA order falls within one of § 7123(a)'s two exceptions to review in the court of appeals, this does not mean the district courts are open.  It means that review is precluded in any court."  367 F.3d 932, 935 (D.C. Cir. 2004).  That considered and succinct statement regarding non-constitutional claims admits of no qualifications.

Other opinions of our court interpreted § 7123(a) as the court did in *Loy*.  For example, *U.S. Department of Justice v. FLRA* held that "it is not the business of the courts to second-guess arbitral judgments that fall within the compass of § 7123(a)(1)."  981 F.2d 1339, 1344 (D.C. Cir. 1993).  In *U.S. Department of Treasury v. FLRA*, the court held "that the district courts lack jurisdiction to review arbitration awards arising under the FSLMRS."  43 F.3d 682, 687 (D.C. Cir. 1994).  In *Association of Civilian Technicians, Inc. v. FLRA*, our court stated: "Pointing out that FLRA section 7123 mentions only 'courts of appeals,' the [plaintiff] insists that the provision does not bar *district courts* from reviewing appropriate unit determinations. . . . [W]e disagree."  283 F.3d at 341.  In *American Federation of Government Employees v. Secretary of the Air Force*, the court held again that under § 7123(a)(1) the district courts are not available.  716 F.3d 633, 637 (D.C. Cir. 2013).  In yet another case, *U.S. Department of Homeland*

*Security v. FLRA*, the court wrote: "In *Griffith*, we held that . . . there was 'unusually clear congressional intent generally to foreclose review' of 'nonconstitutional claims.'"[10]  784 F.3d 821, 823 (D.C. Cir. 2015) (quoting *Griffith*, 842 F.2d at 490).

As against this solid, unbroken line of circuit precedent dealing with § 7123(a), the union invokes a case dealing with an entirely different statute, *Nyunt v. Chairman, Broadcasting Board of Governors*, 589 F.3d 445 (D.C. Cir. 2009).  There we stated that "[t]he *Leedom v. Kyne* exception applies . . . only where (i) the statutory preclusion of review is implied rather than express." *Id*. at 449.  The union's claim, with which the district court agreed, is that *Leedom v. Kyne* establishes district court jurisdiction to review FLRA arbitration decisions because § 7123 does not "expressly" preclude it.

There are several reasons why the statement in *Nyunt* cannot supplant or even detract from the interpretation of § 7123(a) in our circuit precedents just discussed.  Assume, for the moment, that *Nyunt* is inconsistent with our court's decisions under § 7123(a).  Even so this would not support the union's position.  *Nyunt*, as stated above, involved a different and unrelated statute.  When "a precedent of [our court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [a later panel] should follow the case which directly controls, leaving to [the court en banc] the prerogative of overruling" the earlier decision. *Rodriguez de*

---

[10] The *Griffith* court held that a constitutional challenge, as distinguished from a non-constitutional challenge, to an FLRA arbitration decision could be brought in the district court.  842 F.2d at 495.  The Supreme Court drew a similar distinction between constitutional and non-constitutional claims in *Webster v. Doe*, 486 U.S. 592, 603 (1988), over Justice Scalia's dissent.  The union's claims here are non-constitutional.

*Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989); *see, e.g.*, *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997). Here the directly controlling cases from our circuit are those dealing with § 7123(a), not *Nyunt*.

We recognize that even without a reversal en banc, panel opinions of our court might be overcome by a Supreme Court decision or decisions. *E.g.*, *Dellums v. U.S. Nuclear Regul. Comm'n*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988). And so we have considered whether the Supreme Court has ever embraced *Nyunt*'s implied-express formula to decide whether a statute precluded judicial review. We have found that whether "the statutory preclusion of review" is "express" or "implied" has never been the test.

The Supreme Court's opinion in *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), makes this as clear as can be. The Court held: "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." 467 U.S. at 345. The Supreme Court reiterated this standard in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994): "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, [and] its legislative history . . .." And in 2012—three years *after Nyunt* was decided—Justice Scalia wrote for a unanimous Court that "in determining '[w]hether and to what extent a particular statute precludes judicial review,' we do not look 'only [to] its express language." *Sackett v. EPA*, 566 U.S. 120, 128 (2012) (alterations in original) (quoting *Block*, 468 U.S. at 345). *Sackett* directly contradicted the implied-express dictum in *Nyunt*. The holdings in many other Supreme Court cases dealing with preclusion of judicial review are to the same effect.

*See, e.g.*, *S. Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 456–60 (1979); *Lindahl v. Off. of Pers. Mgmt.*, 470 U.S. 768, 779 (1985); *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 673 & n.4 (1986); *United States v. Fausto*, 484 U.S. 439, 444 (1988).[11]

Our decisions were therefore on solid ground in construing § 7123(a)(1) with the "traditional tools of statutory construction,"[12] including legislative history, and in concluding that Congress had not only foreclosed direct review in the courts of appeals but also in the district courts.

We have not attempted to place our court's construction of § 7123(a) into *Nyunt*'s "express" category, although there are strong arguments for doing so. *Griffith* itself ruled that § 7123 contained "specific language" barring judicial review in any federal court and that Congress "could hardly have made its view on the matter clearer." 842 F.2d at 492. To the extent that *Nyunt* is inconsistent with our earlier § 7123(a) line of cases, settled circuit law dictates that those cases, not *Nyunt*, control. *E.g.*, *De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1105 (D.C. Cir. 2017); *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

---

[11] *Nyunt* also stated in dictum that application of *Leedom v. Kyne* turned on whether the plaintiff had an alternative avenue of review. 589 F.3d at 449. This statement too seems to contradict circuit precedent. *See Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 499 (D.C. Cir. 1980) (en banc) ("[I]t is not the unavailability of a remedy which triggers the [*Leedom v.*] *Kyne* exception, but the violation of a clear statutory demand.") (citation omitted).

[12] *Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 66 (D.C. Cir. 1987), quoting *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984), and construing § 7123(a)(1) in a case raising a related issue about judicial review of FLRA unfair labor practice decisions.

16

We end this part of our opinion where perhaps we should have begun, with *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). There the Supreme Court held that "the Administrative Procedure Act . . . embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Id.* at 140 (quoting 5 U.S.C. § 702). Judicial opinions often cite this presumption in cases dealing with statutes allegedly foreclosing judicial review, and with *Leedom v. Kyne. See, e.g.*, *Griffith*, 842 F.2d at 490; *Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988).

In this case the premise of the *Abbott Laboratories* presumption is absent. The APA does not apply when "(1) statutes preclude judicial review[] or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *see Abbott Labs.*, 387 U.S. at 140. When introduced, the bill that became the APA required for the first exception that "statutes *expressly* preclude judicial review." S. 7, 79th Cong. § 10 (as introduced in Senate, Jan. 6, 1945) (italics added). The Senate Committee on the Judiciary deleted the word "expressly." ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 94 n.4 (1947). Under the APA as enacted, a "statute may in terms preclude, or be interpreted as intended to preclude, judicial review altogether." *Id.* at 94.[13] As we have discussed, § 7123(a)(1) has been so interpreted by our court.

---

[13] The Supreme Court has relied on the ATTORNEY GENERAL'S MANUAL to interpret the APA. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979); *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 546 (1978). So too has this court. *See, e.g.*, *Am. Min. Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109, 1111 (D.C. Cir. 1993); *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 n.17 (D.C. Cir. 1974).

Even if the presumption applied despite the inapplicability of the APA from which it is derived, the result here would be no different. The "presumption favoring judicial review is not to be applied in the 'strict evidentiary sense,'" but may be "'overcom[e] whenever the congressional intent to preclude review is 'fairly discernible in the statutory scheme.'" *Block*, 467 U.S. at 350–51 (*quoting Data Processing Serv. v. Camp*, 397 U.S. 150, 157 (1970)). "Here, as in *Block*, we think Congress' intention is fairly discernible, and that 'the presumption favoring judicial review . . . [has been] overcome by inferences of intent drawn from the statutory scheme as a whole.'" *Fausto*, 484 U.S. at 452 (quoting *Block*, 467 U.S. at 349) (alterations in original).

**III.**

Nor did the FLRA defy the FSLMRS in the same way that the NLRB had defied the statute in *Leedom v. Kyne*. In *Kyne* the National Labor Relations Board admitted that it had acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." 358 U.S. at 188. The "specific prohibition" stated that the Board "shall not" take a certain action. *Id.* The Board took the action anyway. So for *Leedom v. Kyne* to apply here, the FLRA must have violated "a specific and unambiguous statutory directive" or engaged in an action that "'on its face' violated a statute." *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1264 (D.C. Cir. 2006) (citation omitted); *Dart*, 848 F.2d at 222. *Kyne* does not apply if the FLRA made a "[g]arden-variety error[] of law." *Griffith*, 842 F.2d at 493.

Section 7122(b) of the FSLMRS states: "If no exception to an arbitrator's award is filed under subsection (a) of this section during the 30-day period beginning on the date the award is

18

served on the party, the award shall be final and binding." 5 U.S.C. § 7122(b). If exceptions are filed, the award becomes final and binding when appellate procedures are exhausted. *Dep't of Health & Hum. Servs. Soc. Sec. Admin.*, 41 F.L.R.A. 755, 766 (1991); *see also Dep't of Health & Hum. Servs., Soc. Sec. Admin. v. FLRA*, 976 F.2d 1409, 1413 (D.C. Cir. 1992).

The union's argument is that the FLRA, in vacating for lack of jurisdiction the arbitrator's award and summaries and the FLRA's own prior decisions in the matter, violated § 7122(b). But at most, that is a "[g]arden-variety error[] of law," and we express no opinion about whether it even is that. *Griffith*, 842 F.2d at 493. To begin with, § 7122(b) may only govern the conduct of the parties to the arbitration. If neither party files an exception within thirty days, the employing "agency shall take the actions required by an arbitrator's final award." 5 U.S.C. § 7122(b). After thirty days, if neither party files an exception, the award becomes final and binding—on the parties. Under this theory, § 7122(b) is not, as in *Kyne*, a "specific prohibition" directing the FLRA to refrain from vacating an arbitrator's finalized award because of a jurisdictional defect.

That the FLRA may reconsider an arbitrator's jurisdiction when hearing exceptions after deciding earlier exceptions in the same case seems fairly obvious. The union's contrary claim—that Congress prohibited the FLRA from having second thoughts about the arbitrator's jurisdiction—creates some tension with FLRA precedents[14] and with the judicial principle

---

[14] In the challenged decision, the FLRA reasoned that not only can it *sua sponte* consider whether an arbitration matter involves classification, but it "is required to address" the arbitrator's jurisdiction "regardless of whether the issue is also presented to the arbitrator." *HUD VIII*, 70 F.L.R.A. at 607 & n.35; *see also Off. & Pro. Emps. Int'l Union, Local 2001*, 62 F.L.R.A. 67, 69 (2007); *U.S.*

that jurisdictional questions may be raised at any time, including by the court itself. *See Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). True, the FLRA is not a court. But Congress "intended that in the area of arbitral awards the [FLRA] would play in federal labor relations the role assigned to district courts in private sector labor law." *Griffith*, 842 F.2d at 491. So, like a court, the FLRA could have the prerogative to verify subject-matter jurisdiction at every stage of a proceeding.

Institutional reform cases dealing with prisons, for example, provide another comparison. A district court may enter multiple decrees or injunctions over time, revising and amending its initial order. *See, e.g.*, *Miller v. French*, 530 U.S. 327, 331–32 (2000). While a particular injunction or decree is in effect, it binds the parties. But the district court retains the power to modify the ongoing equitable relief. *See, e.g.*, *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 380–81 (1992); *United States v. W. Elec. Co.*, 46 F.3d 1198, 1203 (D.C. Cir. 1995). In short, an order that is final and binding on the parties is often not final and binding on the court. *See Rufo*, 502 U.S. at 380–81.

The same principle arguably applies here. After the arbitrator issued the operative remedial award, the parties began implementation proceedings. During those proceedings, the arbitrator created ten written summaries.[15] *See HUD VIII*, 70

---

*Dep't of the Army*, 61 F.L.R.A. 8, *4–7 (2005); *USDA, Food & Consumer Serv.*, 60 F.L.R.A. 978, 981 (2005); *U.S. EEOC, Memphis Dist. Off.*, 18 F.L.R.A. 88, 89 n.2 (1985).

[15] Early on, HUD filed exceptions claiming that the arbitrator impermissibly modified the remedial award through the summaries, which had, among other things, expanded the class of employees covered by the remedy. *HUD VIII*, 70 F.L.R.A. at 606. The FLRA

F.L.R.A. at 607.  Through the summaries, the arbitrator "slightly changed the award at every implementation meeting."  *Id.* at 608.  Given that an arbitrator can adjust an award throughout its implementation, awards are not categorically "final and binding" on arbitrators.  *See Am. Fed. of Gov't Emps. Local 3615*, 54 F.L.R.A. 494, 496, 498 (1998).   It would be somewhat anomalous to suppose that § 7122(b) restricts the FLRA but not arbitrators.

Other than § 7122(b), the union also relies on § 7122(a), the provision dealing with FLRA review of exceptions to arbitration awards.  Section 7122(a) provides that "[i]f upon review [of exceptions] the Authority finds that the award is deficient[,] . . . the Authority may take such action and make such recommendations concerning the award as it considers necessary . . .."  5 U.S.C. § 7122(a).  The union claims that the word "the" in "*the* award" (italics added) is an affirmative command: the FLRA can only review the singular award before it.  The district court, too, emphasized that "the award" refers to a "single object."

Perhaps.  But it is debatable whether § 7122(a)'s use of the term "the award" is a statutory mandate that amounts to a specific prohibition.  Section 7122(a) gives the FLRA the power to review exceptions.  It does not, by its text, limit the FLRA's review of jurisdictional defects.  Section 7122(a) thus lacks the clarity required to support the application of *Leedom v. Kyne*.

"[T]he distinction between violation of a clear and of a not so clear statutory command is neither completely satisfying nor, save where the violation is conceded, as it was in *Leedom v.*

---

dismissed the exceptions as untimely without considering the merits of HUD's argument.  *U.S. Dep't of Hous. & Urb. Dev.*, 68 F.L.R.A. 631, 634–36 (2015).

*Kyne*, readily applied." *Local 1545*, 286 F.2d at 133 (italics added). To sum up, in holding that the arbitrator lacked jurisdiction over the parties' dispute, the FLRA did not violate an obvious statutory prohibition.

Still another problem with the union's argument is that the FSLMRS says nothing about the finality of awards when exceptions are filed. Because exceptions were filed to the arbitrator's operative remedial award, the FLRA might well have violated no statutory provision when it vacated that award. Once the FLRA vacated the remedial award, the arbitrator's implementation summaries—whether vacated or not—at least arguably became unenforceable.

\* \* \*

Accordingly, we vacate the district court's orders denying the FLRA's motion to dismiss and granting summary judgment to the union and remand the case to the district court with instructions to dismiss the complaint.

*So ordered.*

WILKINS, *Circuit Judge*, concurring in the result:

In order to avail itself of *Leedom* jurisdiction, *see Leedom v. Kyne*, 358 U.S. 184 (1958), the American Federation of Government Employees, National Council of HUD Locals, Council 222 (the "Union") needed to show that the Federal Labor Relations Authority ("FLRA") decision below was plainly *ultra vires*. Because the Union cannot meet that high bar, the *Leedom* exception does not apply, the District Court had no jurisdiction to entertain the present lawsuit, and its judgment must be reversed. That should end the matter.

The majority wanders further, opining that 5 U.S.C. § 7123(a) categorically bars district court review of FLRA arbitration decisions even if a party can show that the FLRA action was *ultra vires*. The majority also declares that our decision in *Nyunt v. Chairman, Broadcasting Board of Governors*, 589 F.3d 445 (D.C. Cir. 2009) (Kavanaugh, J.), is both irrelevant and incorrect, even though no party made those contentions. Those musings are not only unnecessary to the result, but they are also inconsistent with precedent. I therefore cannot join the majority opinion and must write separately.

## I.

The *Leedom* exception is one of vanishingly few avenues that provide the "availability of nonstatutory review for statutory claims," 33 CHARLES ALAN WRIGHT, CHARLES H. KOCH & RICHARD MURPHY, FEDERAL PRACTICE AND PROCEDURE § 8362 (2d ed. 2018). Jurisdiction for *ultra vires* review does not arise out of an agency's statutory scheme but instead "evolved out of courts' use of their equitable jurisdiction to enjoin illegal agency action." *Id.* § 8307. Indeed, "[j]udicial review for *ultra vires* agency action 'rests on the longstanding principle that if an agency action is unauthorized by the statute under which [the agency] assumes to act, the agency has violate[d] the law and the courts

generally have jurisdiction to grant relief.'" *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (quoting *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (internal quotation marks omitted)).

Accordingly, the *Leedom* exception, "premised on the *original* federal subject matter jurisdiction of the district courts," *Am. Fed'n of Gov't Emps. Local 3690 v. FLRA*, 3 F.4th 384, 390 (D.C. Cir. 2021) (emphasis in original) (quoting *Am. Fed'n of Gov't Emps., Local 2510 v. FLRA*, 453 F.3d 500, 506 (D.C. Cir. 2006)), "permits, in certain limited circumstances, judicial review of agency action for alleged statutory violations even when a statute precludes review," *Nyunt*, 589 F.3d at 449.

This Circuit employs the test articulated in *Nyunt* to guide application of the *Leedom* exception. *See generally Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022); *Fed. Express Corp.*, 39 F.4th at 763; *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019); *Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force*, 716 F.3d 633, 639 n.6 (D.C. Cir. 2013); *see also N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1263 (D.C. Cir. 2020). Relying on existing caselaw, then-Judge Kavanaugh devised a three-factor test that explains the *Leedom* exception applies "only where (i) the statutory preclusion of review is implied rather than express," "(ii) there is no alternative procedure for review of the statutory claim," and "(iii) the agency plainly acts 'in excess of its delegated powers and contrary to a specific prohibition in the' statute that is 'clear and mandatory[.]'" *Nyunt*, 589 F.3d at 449 (quoting *Leedom*, 358 U.S. at 188) (first citing *Bd. of Govs. of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991); then citing *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of the Jud. Conf. of the U.S.*, 264 F.3d 52, 63–64 (D.C. Cir. 2001); and then citing

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263–64 (D.C. Cir. 2006)).

Thus, if the party seeking review cannot show that the agency action being challenged was taken plainly in excess of the agency's powers and contrary to a statutory prohibition, it loses. That is the case here.

## II.

In its complaint, the Union alleged that the FLRA "acted contrary to a clear and mandatory provision of [5 U.S.C. § 7122(b)]" when it "refus[ed] to uphold the final and binding arbitral decisions underlying and in *HUD I* through *HUD VII* and Summaries 1 [through] 9." J.A. 391. In the contested action, upon review of HUD's exception to the tenth summary of the arbitrator, the FLRA vacated all of the arbitrator's previous awards, set aside all of her summaries (except the tenth summary), and vacated all of the agency's own prior decisions in *HUD I* through *HUD VII* on the grounds "the [a]rbitrator has always lacked jurisdiction over the grievance, as a matter of law" and "should have declared this grievance to be non-arbitrable from the outset." *U.S. Dep't of Hous. & Urb. Dev.*, 70 F.L.R.A. 605, 608 (2018) ("*HUD VIII*").

The FLRA rejected the contention that vacating the arbitrator's decisions violated 5 U.S.C. § 7122(b), which provides that arbitral decisions are "final and binding" once any exceptions are resolved. As it explained, while "the prior arbitration awards and written summaries, with the exclusion of the tenth written summary, were final and binding[,]" the "[FLRA] may consider jurisdictional questions even where the merits of an underlying final and binding award are not at issue." *U.S. Dep't of Hous. & Urb. Dev.*, 71 F.L.R.A. 17, 18

4

(2019) ("*HUD IX*"). Unfortunately for the Union, the FLRA is correct.

**A.**

The Union claims that the "final and binding" language in the statute compelled the FLRA to treat its prior jurisdictional finding as law of the case and consequently prevented the FLRA from revisiting that finding. There are several weaknesses to this argument. First, it is not even clear that the law of the case doctrine, which provides that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*," *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (emphasis in original), even applies to administrative agencies like the FLRA. *See Biltmore Forest Broad. FM, Inc. v. Fed. Commc'ns Comm'n*, 321 F.3d 155, 163 (D.C. Cir. 2003) (noting "that the law of the case doctrine is of uncertain force in the context of administrative litigation"); *see also* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (3d ed. 2019) (while "agencies . . . may find it desirable to invoke law-of-the-case principles[,] . . . [t]he increased flexibility that distinguishes administrative procedure from judicial procedure may, however, lead agencies to take a somewhat more relaxed view of the need for consistency[.] . . ."). And even if the law of the case doctrine applied to the FLRA, "[t]he doctrine is a discretionary prudential doctrine, not a jurisdictional bar[.] . . ." *Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 45 F.4th 306, 312 (D.C. Cir. 2022). Thus, because "[l]aw of the case directs a court's discretion [and] does not limit the tribunal's power[,]" *Arizona v. California*, 460 U.S. 605, 618 (1983), the FLRA's failure to employ the doctrine cannot support a claim that the FLRA acted *ultra vires* (in excess of its power), even if the doctrine applied.

**B.**

The Union's argument that the "final and binding" language in Section 7122(b) precludes the FLRA from vacating these arbitral awards also falls flat. First, the most natural reading of the text is that "final and binding" refers to the parties to the award because it is the parties to the dispute who are bound by the decisions and remedial provisions set forth by the arbitrator. At most, whether the "final and binding" language applies to the FLRA—upon review of the arbitrator's decision—is ambiguous.

The FLRA has concluded that it has the obligation to review and set aside even "final and binding" awards if it determines that the underlying grievance was outside of the arbitrator's statutory jurisdiction, *HUD IX*, 71 F.L.R.A. at 18, which is consistent with the approach it has taken for many years, *see U.S. Dep't of Agric. Food & Consumer Serv.*, 60 F.L.R.A. 978, 981 (2005) (noting FLRA precedent from 1999 holding that "the Authority's subject matter jurisdiction may be raised at any stage of the Authority's proceedings" has "been applied subsequently in several decisions"). Given the ambiguity of the statute, we must defer to the FLRA's interpretation of its statutory jurisdiction, if it is reasonable. *See Bureau of Alcohol, Tobacco, and Firearms v. FLRA*, 464 U.S. 89, 97 (1983) ("[R]eviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act"); *see also City of Arlington, Tex. v. Fed. Commc'ns Comm'n*, 569 U.S. 290, 303 (2013) ("The U.S. Reports are shot through with applications of *Chevron* to agencies' constructions of the scope of their own jurisdiction."). And the FLRA's interpretation does appear to be reasonable, as it is consistent with the view of the Federal Circuit that "the arbitrator's jurisdiction cannot extend to a case over which the statute does not grant him authority, and such

jurisdictional issue may be raised at any time." *Devine v. Levin*, 739 F.2d 1567, 1570 (Fed. Cir. 1984).

\* \* \*

In sum, because the Union cannot show that the FLRA plainly acted "'in excess of its delegated powers and contrary to a specific prohibition in the statute' that is 'clear and mandatory,'" *Nyunt*, 589 F.3d at 449 (quoting *Leedom*, 358 U.S. at 188), it cannot avail itself of district court review under *Leedom*. As we observed recently when applying this third prong of the *Nyunt* test, "[t]o be ruled *ultra vires*, the challenged action must 'contravene[] a clear and specific statutory mandate[,]' . . . and the statutory construction adopted by an agency will be held 'impermissible' only if it is 'utterly unreasonable[.]'" *Fed. Express Corp.*, 39 F.4th at 766 (citations and quotations omitted).

## III.

Reaching the conclusion that the Union cannot meet the third prong of the *Nyunt* test was all that was necessary for the majority to decide this case. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in judgment) ("If it is not necessary to decide more to dispose of a case, then it is necessary *not* to decide more."). I am tempted to ignore this surplusage, but I would be remiss if I did not call attention to a couple of major problems.

## A.

First, the majority stretches the holding of *Griffith v. FLRA* to proclaim a rule that conflicts with our precedent. 842 F.2d 487 (D.C. Cir. 1988).

The majority asserts that *Griffith* and subsequent authorities demonstrate that "in non-constitutional cases, if a federal statute clearly bars district court jurisdiction—as § 7123(a) does over arbitration-related decisions—that ends the matter." Maj. Op. 11. The majority's assertion directly contradicts *Griffith*'s statement that "we find that the statute [§ 7123(a)] leaves the door ajar for clear *violations of statutory authority* under *Leedom v. Kyne. . . .*" *Griffith*, 842 F.2d at 490 (emphasis added). The majority acknowledges the contradiction, Maj. Op. 10 n.8, but nonetheless protests that we did not really mean what we said in *Griffith*, *id.* at 11. The majority's strained protests are belied by what we said barely one year later, when we observed—in a case about the scope of review of FLRA arbitration decisions—that we really did mean what we said in *Griffith*:

> [O]ur earlier opinion in *Griffith* . . . h[eld] that the merits of arbitration awards appealed to the FLRA are not further reviewable in *any* federal court unless the arbitrators' decision (and the FLRA's affirmance) is challenged as unconstitutional *or falls within the narrow bounds of the Leedom v. Kyne*[.] *. . exception to statutory provisions*.

*Dep't of Treasury, Off. of Chief Couns. v. FLRA*, 873 F.2d 1467, 1472 (D.C. Cir. 1989) (Supplemental Opinion) (second emphasis added).

More of our precedent undermines the majority's reading of *Griffith*. If the majority were correct, *Griffith* established a rule that in cases challenging an FLRA arbitration decision as contrary to a statute (rather than contrary to the constitution), *Leedom* jurisdiction is absolutely foreclosed because "that ends the matter." Maj. Op. 11. Accordingly, under the majority's

rule, we would not need to determine whether the challenged FLRA arbitration decision violated a plain statutory command in order to disclaim *Leedom* jurisdiction because only constitutional violations can confer *Leedom* jurisdiction in FLRA arbitration cases in the first place. But we did just that in *U.S. Department of Justice v. FLRA*, where notwithstanding our citation of *Griffith*, we examined whether the challenged FLRA arbitration order was a "facial violation or a patent misconstruction of the Statute" before we ruled there was no *Leedom* jurisdiction. 981 F.2d 1339, 1344 (D.C. Cir. 1993). Likewise, in *U.S. Department of Treasury, U.S. Customs Service v. FLRA*, another case involving an FLRA arbitration, we said—notwithstanding our citation of *Griffith*—that "*Leedom* stands for the proposition that *if an agency openly violates a clear mandate of a statute* even a preclusion of judicial review (in that case implied) will not bar judicial intervention. . . . *There is no such clear transgression of a substantive statutory mandate here.*" 43 F.3d 682, 688 (D.C. Cir. 1994) (emphases added). Again, there would have been no need for us to examine whether a statute was "clear[ly] transgress[ed]" if non-constitutional challenges to FLRA arbitration decisions were indeed unqualifiedly outside of *Leedom* review.

The majority's categorical reading of *Griffith* cannot be squared with precedent where we did not treat the fact that the plaintiffs raised statutory violations in FLRA arbitration cases, rather than constitutional violations, as if it were the "end of the matter." I grant that the majority cites language from our cases that supports its view, *see* Maj. Op. 12–13, but where resolution of this case does not turn on which reading of *Griffith* is correct, I would think it wise for us to avoid trying to solve that riddle today.

**B.**

Second, the majority insists that our precedent in *Nyunt* is not controlling because it "deal[s] with an entirely different statute[,]" Maj. Op. 13, even though no one made or briefed that argument. To the contrary, both sides asked us to apply the *Nyunt* test to resolve this case. Appellant Br. 57, 62; Appellee Br. 22, 38; Appellant Reply Br. 1–2. Furthermore, it was unnecessary to decide whether *Nyunt* "controlled" this case or not because the Union could not satisfy the *Nyunt* test anyway.

As explained above, the third prong of the *Nyunt* test requires a plaintiff to show that the "agency plainly act[ed] 'in excess of its delegated powers and contrary to a specific prohibition in the' statute that is 'clear and mandatory[.]'" *Nyunt*, 589 F.3d at 449 (quoting *Leedom*, 358 U.S. at 188). The majority found that the Union's contention that the FLRA violated Section 7122(a) was at best "debatable," Maj. Op. 20, and that the FLRA "might well have violated no statutory provision" at all, *id*. 21. Accordingly, because the Union did not show that the FLRA had "plainly acted" in excess of its powers or in violation of any statute, the Union crashed at *Nyunt's* third prong and there was no need to deem *Nyunt* irrelevant to this dispute.

**C.**

Third, the majority piled onto *Nyunt* even further, by suggesting that certain language in the opinion is erroneous, even though, as noted above, none of the parties argued that *Nyunt* was wrong.

This tack is especially curious. After all, if, as the majority contends, *Nyunt* does not supply the correct test for FLRA

arbitration cases, all the majority had to do was to say so. That would make *Nyunt* immaterial to the present dispute.

Apparently, the majority wasn't finished with *Nyunt*. My colleagues hazard on, asserting that they have reviewed "whether the Supreme Court has ever embraced *Nyunt's* implied-express formula to decide whether a statute precluded judicial review[,]" and concluding that "[they] have found that whether 'the statutory preclusion of review' is 'express' or 'implied' has never been the test." Maj. Op. 14. Conscious that a subsequent panel of our court cannot overrule an earlier panel decision without the assent of a majority of the full court, *see LaShawn A.*, 87 F.3d at 1395, the majority invokes authority holding that a panel can discard one of our precedents if that precedent has been subsequently "eviscerated" by the Supreme Court. *See Dellums v. U.S. Nuclear Regul. Comm'n*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988) (cited at Maj. Op. 14).

But *Nyunt* has never been "eviscerated" by the Supreme Court. Not even close.

The majority cites Supreme Court cases to support the proposition that a court can find Congress *expressly* precluded judicial review not only by examining the statutory text by itself, but also by examining the text in conjunction with the statutory scheme, the statute's purpose and any other tool of statutory construction. Maj. Op 15–16. I agree with this proposition, but I disagree that Supreme Court cases expounding this proposition somehow "eviscerate" *Nyunt*. To the contrary, *Nyunt* says nothing about what interpretive tools a court can (or cannot) use to construe a statute that is claimed to preclude judicial review, and the majority cites to no such language.

11

The majority appears to take exception to the fact that *Nyunt* says that "statutory preclusion of review" can be either "express" or "implied." *Nyunt*, 589 F.3d at 449 (cited at Maj. Op. 13). But this language from *Nyunt* only means that when the statute is fairly construed as "expressly" evincing congressional intent to preclude judicial review, that is the end of the matter—the courts have no jurisdiction. On the other hand, if a fair construction of the statute is ambiguous or merely "implies" that Congress may have intended to preclude judicial review, then we should review other considerations to ensure that the presumption of judicial review has been clearly overcome. Far from being eviscerated, this understanding of the law is absolutely consistent with Supreme Court precedent, both before and after *Nyunt*.

Indeed, the Supreme Court has never considered the concept of "implied" preclusion of judicial review as anathema. In *Bowen v. Michigan Academy of Family Physicians*, which is favorably cited by the majority, *see* Maj. Op. 15, the Court first examined the statutory text and found no express preclusion of judicial review of the matter in dispute, and then went on to hold that the asserted claim was "not *impliedly* insulated from judicial review" by the statute. 476 U.S. 667, 678 (1986) (emphasis added). In *Barlow v. Collins*, the Court first concluded that none of the pertinent statutes "expressly preclude[d] judicial review," 397 U.S. 159, 165 (1970), and then, citing *Leedom*, stated that "[t]he question then becomes whether nonreviewability can fairly be *inferred*" before ruling that there was no preclusion, *id*. at 166 (emphasis added). In *De Martinez v. Lamagno*, the Court reviewed the statutory text, context, scheme and history to conclude there was no express preclusion of judicial review "[b]ecause the statute [was] reasonably susceptible to divergent interpretation[.]" 515 U.S. 417, 434 (1995). Thus, the Court "adopt[ed] the reading that accords with traditional

understandings and basic principles: that executive determinations generally are subject to judicial review," and found no preclusion to judicial review. *Id*. But implied preclusion is no one-way ratchet. In *Block v. Community Nutrition Institute*, also favorably cited by my colleagues, *see* Maj. Op. 17, the Court held that "[t]he structure of this Act *implies* that Congress intended to preclude consumer challenges to the Secretary's market orders[,]" and thus denied review. 467 U.S. 340, 352 (1984) (emphasis added).

In each of these cases, the Court examined statutes where preclusion of judicial review was deemed to be ambiguous, "implied," or "inferred," rather than express. Sometimes the implication (or inference) of preclusion was strong enough to overcome the presumption favoring review. Sometimes it was not.

Thus, in *Nyunt*, we were absolutely correct to say that *Leedom* jurisdiction "applies . . . only where . . . the statutory preclusion of review is implied rather than express[.]" 589 F.3d at 449. If the preclusion of review is express, then the answer is that there is no jurisdiction; but if the preclusion of review is implied, then the answer to whether a court has jurisdiction is that "it depends." *MCorp* is not to the contrary. There, the Court noted that the pertinent statutory provision expressly precluded judicial review of the asserted claim, which distinguished that statute from the law at issue in *Leedom*, which only "implied, by its silence, a preclusion of review of the contested determination." *MCorp*, 502 U.S. at 44. If the distinction between an implied preclusion of review and an express preclusion of review were completely irrelevant, as the majority contends, the Court would have had no need to comment on the difference between the two statutes.

13

But perhaps the best defense of then-Judge Kavanaugh's opinion in *Nyunt* is an opinion from now-Justice Kavanaugh. Writing for the Court in *American Hospital Association v. Becerra*, Justice Kavanaugh considered the government's argument that the district court had no jurisdiction to review the agency determination because "Congress *implicitly* granted the agency judicially unreviewable discretion[.]" 596 U.S. 724, 733 (2022); *see also id.* at 733 ("[T]he detailed statutory formula for the reimbursement rates undermines HHS's suggestion that Congress *implicitly* granted the agency judicially unreviewable discretion") (emphasis added). The Court rejected the asserted "implicit" preclusion of review, holding that "[the government's] arguments against judicial review cannot override the text of the statute and the traditional presumption in favor of judicial review of administrative action." *Id.* at 734.

The moral to the story is that implied preclusion of review is different than express preclusion. Unlike with express preclusion, implied preclusion sometimes does not override the presumption in favor of judicial review. That is the point of *Nyunt* and that principle has not been "eviscerated." *See Dellums*, 863 F.2d at 978, n.1. To the contrary, that principle has been confirmed.

* * *

My colleagues in the majority went too far and said too much. I agree with the result, but I cannot join their opinion. I respectfully concur.